UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CAMPBELL and ELIZABETH CAMPBELL,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MERCURY CASUALTY COMPANY, a subsidiary of MERCURY INSURANCE GROUP, and MERCURY GENERAL CORPORATION,<br><br>　　　　Defendants. | Case No. 17–cv-618–SJF–ARL<br><br><br>OPINION AND ORDER |
| MERCURY CASUALTY COMPANY, a subsidiary of MERCURY INSURANCE GROUP, and MERCURY GENERAL CORPORATION,<br><br>　　　　Third-Party Plaintiffs,<br><br>　　v.<br><br>JUST RIGHT CARPENTRY & PAINTING, INC.,<br><br>　　　　Third-Party Defendants. | |

FEUERSTEIN, U.S.D.J.,

## I.　INTRODUCTION

Plaintiffs, Elizabeth Campbell and John Campbell ("Plaintiffs"), commenced this action to recover on an insurance contract for property damage at their home in Rockville Center, New York ("Property") following a storm in December 2016. Plaintiffs hired Just Right Carpentry & Painting, Inc. ("Just Right") to repair the damage and filed a claim for coverage under a homeowner insurance policy (the "Policy) issued by Mercury Casualty Company and

Mercury General Corporation ("Defendants"). Defendants denied Plaintiffs' claim by letter dated August 1, 2016. On February 8, 2017, Plaintiffs filed a two-count complaint alleging Defendants (i) breached the Policy by denying their claim; and (ii) acted in "bad faith." On June 29, 2018, Defendants filed an Answer and a Counterclaim which alleged that Plaintiff breached the Policy by making material misrepresentations. Defendants also filed a Third-Party Complaint against Just Right, alleging that Just Right made material misrepresentations to Defendants' detriment. Defendants now move, pursuant to Federal Rule of Civil Procedure ("Rule") 56, for summary judgment seeking dismissal of Plaintiffs' claims and judgment in their favor on the Counterclaim and Third-Party Complaint ("Motion"). *See* Motion, Docket Entry ("DE") [83]. Plaintiffs and Just Right oppose Defendants' Motion. (DE [78, 79].) For the reasons that follow, Defendants' Motion is GRANTED in part and DENIED in part.

## II.   BACKGROUND

Pursuant to Rule 56.1 and Local Civil Rule 56.1, any party opposing a motion for summary judgment shall "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." LOCAL CIV. R. 56.1(b). "[E]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph." LOCAL CIV. R. 56.1(c); *Taylor & Fulton Packing, LLC v. Marco Intern. Foods*, *LLC*, No. 09-cv-2614, 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011) ("Where a nonmovant [. . .] files a deficient statement, courts frequently deem all supported assertions in the movant's statement admitted and find summary judgment appropriate." (footnote omitted)); *see also Ezagui v. City of N.Y.*,

726 F. Supp. 2d 275, 285 n.8 (S.D.N.Y. 2010) (noting that statements which a nonmovant does "not specifically deny–with citations to supporting evidence–are deemed admitted for purposes of [movant's] summary judgment motion"). Plaintiffs' and Just Right's responses fail to meet the requirements of Rule 56.1 and Local Civil Rule 56.1.

Nevertheless, "nothing requires a district court to deem evidence admitted, or grant summary judgment, simply because a non-movant fails to comply with local rules such as Local Rule 56.1." *Pensionsversicherungsanstalt v. Greenblatt*, 556 Fed. App'x 23, 25 (2d Cir. February 25, 2014).

### A. FACTUAL BACKGROUND

The Policy, a New York Homeowner Superior Insurance Policy, was in effect from December 30, 2015 to December 30, 2016. (DE [1], Complaint ¶ 8.)

On Saturday, February 20, 2016 at approximately 10:30 pm, Plaintiffs returned from a family vacation and found that portions of their Property were flooded with water due to a burst pipe. (*Id.* at ¶ 9.) The kitchen, dining room, family room, basement, and bathroom were all impacted to varying degrees by the burst pipe. (DE [86-8], Deposition of William Mullen at 23.) In the family room, which runs the length of the back of the house, large sections of the insulation and sheetrock were down and the water on the family room floor was a couple inches deep. (DE [84-2], Deposition of Elizabeth Campbell ("E. Campbell Dep.") at 67-8.)

Ms. Campbell contacted her nephew, Kevin Godfrey, a claims adjuster ("Godfrey"), owner of Long Island Public Adjusters, and informed him of the damage to the Property and that an insurance claim would have to be filed. (E. Campbell Dep. at 71; DE [86-13], Deposition of Kevin Godfrey ("Godfrey Dep.") at 34-36.)

3

That same night, Godfrey contacted Joseph Woods ("Woods") of Just Right and requested that Woods arrive at Plaintiffs' home the next morning (Sunday, February 21, 2016), to begin remediation work. (Godfrey Dep. at 42-45.)

Woods and his team arrived at the Property between 6:30 am and 7:00 am the next day and immediately started vacuuming water out of the basement. (DE [86-3], Deposition of Joseph Woods ("Woods Dep.") at 54-55, 58.) They quickly realized they did not have the proper equipment to remove all the water in the house. (*Id.* at 58.) Woods cut a hole in the ceiling to allow the plumber access to the area of the leak. (*Id.* at 65.) Woods testified that he took out a couple bags of garbage resulting from the cleanup at the Property. (*Id.* at 75). Woods called Godfrey and informed him that the scope of damage was beyond his capacity to fully remediate and that he would ask Bill Harris, a Just Right contract plumber, to contact Advanced Restoration ("Advanced") to complete the remediation. (Woods Dep. at 61-63; Godfrey Dep. at 56.) Godfrey arrived at the Property at approximately 9:00 am to 9:30 am and met with Woods. (Godfrey Dep. at 40.)

Just Right engaged Harris to assess the damage, fix the burst pipe, and turn the heat back on. (Woods Dep. at 38-39.) Harris arrived with Chris McCovey who agreed to help Harris as a favor and was not compensated for his labor. (DE [86-4], Deposition of Bill Harris ("Harris Dep.") at 41, 95; DE [86-11], Deposition of Chris McCovey at 15.)

Advanced performed remediation work at the Property, which included removing anything wet in order to prevent mold. (Woods Dep. at 79; DE [86-7], Deposition of Gerard Buettner at 83.) Advanced's subcontractor, A-1 Restoration, did not see water in the kitchen cabinets or mold on the Property. (DE [84-5] (Exhibit U), Certification of Brian Baldwin).

4

Godfrey prepared an invoice ("EMS Invoice"), on Just Right's behalf for the work completed on February 21, 2016. (Woods Dep. at 39-41; Godfrey Dep. at 125-127). The EMS Invoice charged $2,311 for (i) an emergency service call, (ii) a plumber for eight hours, (iii) content manipulation-2 people at 30 minutes, (iv) water extraction for 15 hours- 3 people at 5 hours, and (v) 1 hour of hauling debris. (DE [84-4] (Exhibit N), EMS Invoice.)

Woods returned to the Property on February 24, 2016 and proceeded to do work for Plaintiffs, which included removing the kitchen cabinets. (Godfrey Dep. at 142; Woods Dep. at 106-109)

On February 25, 2016, Steve Mahoney of ICS Claims inspected the Property on behalf of Defendants. (DE [86-5], Deposition of Steve Mahoney ("Mahoney Dep.") at 44). At the inspection, Mahoney noticed that the walls and floors in the kitchen and den had been taken down. (*Id.* at 97.) Mahoney took multiple pictures of the Property including pictures of the kitchen cabinets in the driveway of the Property. (DE [84-6] at 74-77).

Mahoney's initial report estimated approximately $120,000 in damage to the Property, including $60,000 for the house, $30,000 for its contents, and $30,000 for loss of use. (DE [86-2], Deposition of Jack Scalia ("Scalia Dep.") at 135; Mahoney Dep. at 94-95.) Mahoney concluded that "[t]he dwelling sustained extensive water damage and will, in effect, require gutting and renovation to the kitchen, the rear den, half bathroom, closet area and rear entry, as well as extensive repairs to the finished basement directly below[,] along with necessary electrical repairs and supporting plumbing repairs." (*Id.* at 113.)

On February 26, 2016, Jack Scalia ("Scalia"), an adjuster for Defendants, was assigned to Plaintiffs' case. (Scalia Dep. at 90.) On March 15, 2016, Godfrey submitted to Scalia three documents: a "Rebuild Estimate" which included, *inter alia*, a request for new kitchen cabinets,

5

(*see generally* DE [84-4] (Exhibit Q)), and duplicate EMS invoices for remediation services performed on February 21, 2016 from Just Right and Advanced, for apparently the same work (Scalia Dep. at 166). Scalia gave Godfrey an opportunity to withdraw one of the EMS invoices, which Godfrey declined to do. (*Id.* at 173.)

In large part due to the duplicate EMS invoices, Mercury opened an investigation into the claim, issued a Reservation of Rights ("Reservation of Rights Ltr.") citing intentional acts, material misrepresentations of fact and false and/or fraudulent statements in the presentation of the claim as well as procurement of insurance, and violations of the Policy's Fraud provisions. (DE [84-7] at 24-29, 37-42.) Mercury advised Plaintiffs that they would be subject to an Examination Under Oath. (Scalia Dep. at 174.)

On August 1, 2016, Mercury issued a denial letter, which stated that the Policy was breached as (i) material facts were misrepresented in the presentation of bills for emergency services, (ii) there was a failure to preserve evidence of the damages to the Property for Mercury's review and inspection, and (iii) claims were submitted to Mercury for purported damages to the Property that either did not exist or were not caused by the incident. (DE [84-7] at 37-42.) The claim was denied in its entirety. (*Id.*) On February 8, 2017, this suit was filed by Plaintiffs.

### III.   LEGAL STANDARD

#### A.   Standard for Summary Judgment

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Zaretsky v. William Goldberg Diamond Corp.*, 820 F.3d 513, 519 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). On a motion for summary judgment, "[a] fact is material if it 'might affect the outcome of the suit under the governing law[.]'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015)

6

(quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added) (internal quotations and citation omitted). *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets, and citation omitted). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "[A] mere scintilla of evidence in support of the [non-movant's] position will be insufficient to defeat a summary judgment motion." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252).

"The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Accordingly, when "the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quotations and citation omitted).

### B. Breach of Contract

"Insurance policies are contracts to which the ordinary rules of contractual interpretation apply." *Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y.

2008). New York insurance contracts are construed in light of "common speech." *Ace Wire & Cable Co. Inc., v. Aetna Cas. & Sur. Co.*, 457 N.E.2d 761, 764 (1983). Ambiguous terms in a policy "must be construed in favor of the insured and against the insurer." *White v. Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (2007).

"To void a policy for concealment, misrepresentation, or fraud by the insured . . ., an insurer must show that the statements in question were (1) false, (2) willfully made, and (3) material to the insurer's investigation of the claim." *Mon Chong Loong Trading Corp. v. Travelers Excess & Surplus Lines Co.*, No. 12-cv-6509, 2014 WL 406542, at *1 (S.D.N.Y. Jan. 30, 2014) (quoting *Fine v. Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 52 (2d Cir. 1985)). "Where, as here, the policy contains a clause to the effect that a claim is void if an insured intentionally conceals or misrepresents a material fact concerning a claim under the policy, 'it is clear that good faith and fair dealing are the norms by which proofs of loss are to be measured.'" *Admiral Indem. Co. v. Bouley Int'l Holding, LLC*, No. 02-cv-9696, 2003 WL 22682273, at *4 (S.D.N.Y. Nov. 13, 2003) (quoting *Kaffalos, Inc. v. Excelsior Ins. Co.*, 105 A.D.2d 957 (3rd Dep't 1984)). "The question of materiality is typically one of fact for resolution at trial, but 'where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the Court to determine." *Scottsdale Ins. Co. v. Priscilla Props., LLC,* 254 F. Supp. 3d 476, 482 (E.D.N.Y. 2017) (quoting *Chicago Ins. Co. v. Kreitzer & Vogelman,* No. 97-cv-8619, 2000 WL 16949, at *7 (S.D.N.Y. Jan 10, 2000)).

## IV.  DISCUSSION

### A. <u>Defendants Are Not Entitled To Summary Judgment on the Parties' Breach of Contract Claims.</u>

Defendants argue that Plaintiffs' claim for breach of the Policy fails because, as alleged in Defendants' Counterclaim, Plaintiffs themselves breached the Policy. Specifically,

8

Defendants claim that Plaintiffs breached the Policy by: (1) misrepresenting material facts in the presentation of bills for emergency services, (2) failing to preserve the damages to the Property for Mercury's review and inspection, and (3) submitting claims to Mercury for purported damages to the Property that either did not exist or were not caused by the incident. (DE [84-7] at 37-42, Denial letter)

### 1. Relevant Policy Provisions

Defendants allege that Plaintiffs breached at least two Policy provisions:

SECTION I — CONDITIONS

. . . .

2. **Your Duties After Loss.**  In case of a loss to which this insurance may apply, you must perform the following duties:
    a. Give prompt notice to us or our representatives.
    b. Notify the police in case of loss by theft.
    c. Protect property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenses.
    d. Prepare an inventory of the loss to the **building** and damaged personal property showing the quantity, description and amount of the loss.  Attach all bills, receipts and related documents that justify the figures in the inventory.
    e. As often as we reasonably require:
        (1) exhibit the damaged or undamaged property.
        (2) provide us with the records and documents we request and permit us to make copies; and
        (3) submit to examinations under oath and subscribe the same.  We may examine an **insured** separately and apart from the presence of any other **insured**.

   . . . .

(*Id.* at 40-41)

SECTION I AND II — CONDITIONS

. . . .

3. **Concealment or Fraud.**

   This Policy does not provide coverage for an **insured**:

9

   a. who has intentionally concealed or misrepresented any material fact or circumstance which would have caused us not to issue or renew this policy; or

   b. who either before or after a loss, has intentionally concealed or misrepresented any material fact or circumstance related to such loss.

. . . .

(*Id*. at 41)

## 2.  The EMS Invoice

Defendants allege a violation of Sections I and II in that Plaintiffs, through their agent Godfrey, submitted invoices for Just Right that either drastically inflated the work performed by Just Right or charged for services not performed. (DE [83], "Defendants' Brief" at 7-9.) Defendants question various items on the EMS Invoice including: 1) whether an emergency service call was made after business hours, 2) whether a plumber was present for eight hours on February 21, 2016, 3) whether multiple people moved furniture for 30 minutes, 4) whether three workers worked for five hours extracting water from the basement of the Property, moving contents, and bagging fallen debris, and 5) whether anyone hauled debris for an hour.[1]

The Parties agree: that Woods and his team arrived at the Property between 6:30 am – 7:00 am and immediately started vacuuming water out of the basement (Woods Dep. at 54-55, 58); that another worker carried buckets of water out of the Property (Woods Dep. at 64); that Woods cut a hole in the ceiling from the archway to the kitchen and den to allow his plumber, Harris, to access the area of the leak (Woods Dep. at 63, 65); and that Woods had called Harris the night before and told him Woods and his team would get to the Property "in the morning to move anything that needed to be moved and make the hole accessible for [Harris] to get in and make a repair." (Harris Dep. at 39.) Further, Woods testified that he took out two bags of garbage

---

  [1] Plaintiffs' opposition to the Motion essentially ignores Defendants' allegations relating to the EMS Invoice.

at the Property. (Woods Dep. at 74.). This testimony, viewed in the light most favorable to the non-movant, is consistent with items 5, 6, and 7 on the EMS Invoice.

Defendants question whether "3 people" performed water extraction for "5 hours" as stated in item 6 of the EMS Invoice. This claim appears to be inconsistent with testimony from Woods, who stated that he and his workers arrived as early as 6:30 am and likely left around 9:30 am. This discrepancy, however, does not necessarily constitute a breach of the Policy. Indeed, a breach may only be found if the EMS Invoice was submitted with an intent to defraud or misrepresent material facts. *See St. Irene Chrisovalantou Greek Orthodox Monastery, Inc. v. Cigna Ins. Co.*, 641 N.Y.S.2d 352, 352 (N.Y. App. Div. 1996) (holding that, in an action to recover damages for loss under the terms of an insurance policy, there was an issue of fact as to whether plaintiff submitted proof of the value of stolen jewelry with a willful intent to defraud or to misrepresent material facts.)

As to items 3 and 4 on the EMS Invoice, Harris stated that he arrived "in the morning" with his helper Chris McCovey but was unable to identify an exact time for his arrival. (Harris Dep. at 41). Harris testified that he was present at the Property for "a few hours at least" and that he responded to an "emergency service call on a Sunday morning" with an assistant. (*Id.* at 48, 72). This evidence is also consistent with items 3 and 4 on the EMS Invoice. However, as to costs associated with Harris and McCovey's work, a question of fact exists as to whether Harris was fully compensated by Ms. Campbell on the day the services were rendered for the work performed. Even if Harris was paid in full on the date of service, Defendants have not established that Plaintiffs included items 3 and 4 with an intent to defraud Defendants.

The case *Magie v. Preferred* is instructive. 937 N.Y.S.2d 452 (N.Y. App. Div. 2012). In *Magie*, plaintiffs' house was destroyed by a fire. *Id*. Plaintiffs' insurance company disclaimed

coverage and deemed the policy void due to alleged "misrepresented material facts and [. . .] fraudulent conduct regarding some of their claims including, among other things, misrepresenting the value of the personal property." *Id.* Proofs at trial revealed that the fire destroyed or damaged virtually everything. *Id.* Of the thousands of items identified in plaintiffs' proof of loss, defendants identified a small fraction reflecting incorrect information. *Id.* The *Magie* Court held that "to the extent that plaintiffs made errors when attempting to assess the significant losses, the errors were not intentional and were minor when considered in the context or the overall nature of the losses sustained." *Id*.

As in *Magie*, Defendants seek to void the Policy for minor inconsistencies in the EMS Invoice that may not have been intentional or material misrepresentations. Mahoney, Defendants' agent, concluded in his initial report that repairs to the Property would cost approximately $120,000 and yet Defendants seek to void the Policy due to inconsistencies in a bill amounting to $2,311.00. (Mahoney Dep. at 95:16-18). Further, there is no evidence that Plaintiffs falsified documents or created fraudulent receipts to enhance losses. *See Azzato v. Allstate Ins. Co.*, 951 N.Y.S.2d 726, 731 (N.Y. App. Div. 2012) ("The plaintiffs' contention that the proof Azzato submitted was only intended to be a post-loss estimate of the replacement value of the appliances is belied by the fact that the proof he submitted was made to look like an actual receipt provided to him by the store on the date that he originally purchased the appliances [. . .] [t]hus, the form, in addition to the content, of Azzato's submitted proof of loss evinced his intent to deceive the defendant."). Nor do Plaintiffs claim losses that are "grossly disparate and the explanation tendered is so unreasonable or fantastic that it is inescapable that fraud has occurred." *Saks & Co. v. Continental Ins. Co.*, 242 N.E.2d 833, 835 (N.Y. 1968).

12

Plaintiffs have offered explanations as to some of the items questioned, and evidence must be presented at trial as to whether any errors or misrepresentations were intentional. Therefore, an issue of fact exists as to whether the EMS Invoice was created with an intent to defraud Defendants and judgment as a matter of law is not appropriate at this time.

### 3. Removal of the Kitchen Cabinets

Defendants also contend that the removal of kitchen cabinets by Plaintiffs after Advanced performed remediation services and before Mercury was able to inspect the damages to the Property, violated Section I of the Policy, by failing to "[p]rotect property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenses[,]" in accordance with the Policy. (DE [84-7] at 40) Specifically, Defendants contend that "[i]f the cabinets were not damaged [by the burst pipe] as described by Advanced Restoration, they could have been carefully removed and reused after the remaining work in the kitchen was completed." (Defendants' Brief at 13).

Plaintiffs assert that the cabinets were damaged by the burst pipe and were removed to avoid further damage to the Property. According to Harris, the leak was above "the [den] wall and the kitchen wall[.]" (Harris Dep. at 81, 87). Woods testified that the cabinets "were made out of particle board [and] once it [got] wet it expanded – so that's why [he] removed the cabinets and put them in the driveway and covered them for the Mercury adjuster to come look at." (Woods Dep. at 106). According to Woods, the cabinets were as "intact" as Woods could keep them but "particle board doesn't hold up very well after it gets wet." Mahoney testified that after conducting his inspection at the Property, he concluded that there were no items that were salvageable. (Mahoney Dep. at. 140, 143). Notably, the Court was unable to find testimony from Mahoney corroborating Scalia's testimony that Mahoney was unable to write

13

an estimate because the kitchen was gutted before Mahoney arrived at the Property. (DE [82], Defendants' Statement of Material Facts ("Def. 56.1 Stmt."), ¶ 132).

Based upon the foregoing, Defendants have not established as a matter of law that Plaintiffs are in breach of the Policy as a result of the removal of the kitchen cabinets, and Defendants Motion for summary judgment on the parties' contract claims is denied.

### B. Defendants Are Entitled To Summary Judgment on Plaintiffs' Claim for Bad Faith And Punitive Damages.

"[T]he standard for awarding punitive damages in first-party insurance actions is 'a strict one,' and this extraordinary remedy will be available 'only in a limited number of instances.'" *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 634 N.E.2d 940, 944 (N.Y. 1994) (citations omitted). To succeed on a claim for punitive damages, when the claim arises from a breach of contract, the following elements must be established: (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in *Walker v. Sheldon*, 179 N.E.2d 497 (N.Y. 1961); (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally. *Rocanova*, 634 N.E.2d at 944.

Plaintiffs have failed to provide any evidence of an independent tort outside of the alleged breach of contract claim. This failure is fatal to Plaintiffs' claims. *See New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308 (1995) (declining to award punitive damages because the action was grounded on a breach of contract and the plaintiff failed to state any tort outside of the contract). Further, to prevail on a claim for punitive damages where an insurer disclaims coverage in bad faith, a party must show "more than an arguable difference of opinion between carrier and insured over coverage[.] It would require a showing of such bad faith in denying coverage that no

14

reasonable carrier would, under the given facts, be able to assert it." *Sukup v. State of N.Y.*, 227 N.E.2d 842, 844 (N.Y. 1967).

Defendants assert that Plaintiffs are not entitled to punitive damages because Plaintiffs failed to allege a cause of action for punitive damages separate and apart from its breach of contract claim. The Court agrees.

Plaintiffs allege that Defendants acted in bad faith when they requested various documentation including *inter alia* utility bills, tax returns, deeds to and mortgages on other properties relating to housing accommodations when Plaintiffs' were unable to stay at the Property. (DE [79] at 19-20, Plaintiffs' Affirmation in Opposition,). In other words, Plaintiffs complain of the manner in which Defendant conducted its investigation relating to the Policy. These complaints do not constitute a separate tort.

Based upon the foregoing, this cause of action is duplicative of the breach of contract claim and is dismissed.

    **C.**  **Defendants Are Not Entitled To Summary Judgment on Their Claims Against Just Right.**

Defendants' Motion for summary judgment on its Third-Party claim against Just Right is denied. Defendants have failed to meet their burden to establish a prima facie case as to Just Right. Despite articulating the standard necessary to be successful on their claims, Defendants fail to adequately apply the standard with supporting evidence. Defendants' one-page argument in favor of summary judgment as to Just Right does not establish a prima facie case. *See Haskin v. United States*, No. 10-CV-5089, 2015 WL 3971730, at *5 (E.D.N.Y. June 30, 2015) (quoting *Vega v. Restani Corp.*, 965 N.E.2d 240 (2012) ("The moving party's failure to make a prima facie showing of entitlement to summary judgment requires a denial of the motion, regardless of the

15

sufficiency of the opposing papers." (internal quotation marks and citation omitted))). Defendants' Motion as to Just Right is denied.

### V.  CONCLUSION

In sum, the Court finds that issues of fact exist as to Plaintiffs' breach of contract claim, but that Plaintiffs' claims of bad faith and for punitive damages fail as a matter of law. Thus, it is

**ORDERED**, that Defendants' Motion for summary judgment dismissing the Complaint is granted in part to the extent the Court dismisses with prejudice the Plaintiffs' claims for

(1) bad faith disclaimer of coverage;

(2) punitive and special damages; and it is further

**ORDERED,** that Defendants' Motion for Summary Judgment is otherwise denied.

**SO ORDERED.**

  /s/ Sandra J. Feuerstein  
**Sandra J. Feuerstein**  
**United States District Judge**

**Date: January 12, 2021**